## P. C. WINGATE v. FRED JOHNSON, Appellant.

**Breach of warranty:** PLEADINGS. Where the allegations of a petition indicated an intention to rely on a breach of warranty, the further allegation that defendant knew his statements to be false, did not convert the action into one for misrepresentation and fraud.

**Warranty.** A representation that an animal is as sure a foal getter as ordinary animals of like character, is a warranty of reasonable service as a foal getter.

**Breach of warranty:** EVIDENCE. The actual capacity of an animal for breeding purposes as demonstrated subsequent to a sale, may be shown in an action for the breach of a warranty that he was a sure foal getter.

**Burden of proof.** Where the defendant in an action for breach of a warranty that the animal sold was a sure foal getter, pleads as a defense that its inefficiency was due to improper feed and care subsequent to the sale, he has the burden of proof on that issue.

**Evidence.** The effect of actual proof of the inefficiency of an animal as a foal getter, is not destroyed by a showing that the animal subsequently became less efficient by improper care.

**Instructions.** Failure simply to fully instruct is not reversible error in the absence of a request for instructions.

**Evidence of value.** In an action for a breach of warranty in the sale of an animal, an inquiry of plaintiff whether he knew the fair market value of the animal had he been as plaintiff thought he was, while improper, is held not reversible error, as it appeared evident that plaintiff understood the question to be predicated upon defendant's representations.

**Breach of warranty:** VERDICT. The verdict of $300.00 damages for a breach of warranty in the sale of a jackass is held not excessive.

*Appeal from Fremont District Court.—* HON. O. D. WHEELER, Judge.

FRIDAY, DECEMBER 16, 1904.

ACTION to recover damages for breach of warranty in the sale of a jackass. Verdict and judgment for plaintiff. Defendant appeals.— *Affirmed.*

*W. E. Mitchell,* for appellant.

*T. S. Stevens,* for appellee.

McCLAIN, J.—One of the assignments of error relied on to secure a reversal is that the court erroneously treated the action as one for breach of warranty, when in fact the
1. BREACH OF WARRANTY: pleadings.
petition shows it to have been predicated upon misrepresentation and fraud. But the allegation in plaintiff's petition is that " defendant warranted orally and guarantied that said jackass was a first-class jack, pedigreed, as sure a foal getter as any jack, and that he was in perfect and sound condition; that he would serve mares with as much frequency and get as many with foal as any jackass "— following which were allegations of falsity in the statements alleged to have been made, worthlessness of the animal purchased, and reliance upon defendant's statements and representations by plaintiff. Certainly these allegations indicate an intention to rely upon breach of warranty, even though they contain the specific statement that defendant knew his statements to be false.

In his answer, defendant admitted that he represented to plaintiff " that said jack was as sure a foal getter as ordinary jacks in this climate and country "; and the court, in
2. WARRANTY.
instructions to the jury, interpreted this representation as implying the ability of the animal to render reasonable services as a foal getter. This was certainly a correct interpretation of the meaning of the war-

ranty, as admitted by defendant. We have held that the warranty of a stallion as a "foal getter" means something more than that the stallion is able to get foals, and implies that he can render reasonable service as a foal getter, being sold exclusively for such use. *McCorkell v. Karhoff*, 90 Iowa, 545.

That case also answers another contention made for appellant, to the effect that the court allowed the jury to consider the actual, proved capacity of the jack after his pur-

**3. BREACH OF WARRANTY: evidence.** chase by plaintiff to be considered as bearing upon his condition or quality in the respect warranted at the time of the sale. The complaint is that the court treated the representation as a future warranty, but there is no ground in the record for any such complaint. The evidence was restricted to the proof of those facts legitimately bearing upon the efficiency of the jack as a foal getter at the time of the sale. With reference to this question, it was proper to show what the accomplishments of the animal proved to be in this respect by trial after the sale.

If the incapacity of the jack for breeding purposes was due to lack of proper care or treatment on the part of the plaintiff, this, of course, would be a defense to the action,

**4. BURDEN OF PROOF.** and the jury were so instructed. But counsel for appellant says that the court erred in directing the jury that the burden of proving such defense was on the defendant, whereas the instruction should have been that, unless plaintiff showed that the fault was not due to improper treatment, he could not be entitled to recover on the mere proof of the existence of the fault when the animal was tried. Many cases are cited for appellant in support of this claim, but they are cases in which a common carrier or other bailee, having received property in sound condition and delivered it over in damaged condition, is held to have the burden of explaining that the damage was not due to his own fault, where that fact would constitute a defense. Such cases are not analo-

gous to the one before us, where the defendant interposes as an affirmative defense the fault or neglect of the plaintiff in the care and treatment of the animal; and certainly, after the defendant had alleged the facts by way of defense, the jury could properly be told that the burden was on him to establish them by preponderance of evidence, even though the same facts might have been shown as bearing on the question whether the animal was in the same condition at time of sale as he was at the time when his want of efficiency was demonstrated by experience.   The rule invoked by counsel for appellant, that the burden of proving a negative may rest upon a party by reason of the facts with reference to the matter being peculiarly within his knowledge, is not a rule determining the general burden of proof under the issues, but a regulation as to the order of introduction of evidence. It would certainly have been erroneous in this case to have told the jury that the burden was on the plaintiff to show that the proven inefficiency of the jack could not be considered as tending to show breach of present warranty unless the plaintiff established by preponderance of evidence that it was not due to circumstances intervening between the time of sale and the time that the inefficiency of the animal became apparent.   But the whole controversy as raised by counsel in argument is theoretical.

Immediately after the sale the plaintiff proceeded to make use of the animal for the purpose for which he was purchased, and, while he did in fact serve some mares, it was demonstrated within a month that he did

5. EVIDENCE.    not correspond to the representations made by defendant.   And there is no reasonable suggestion in the evidence that within this period of time there was anything in the care or treatment of him by the plaintiff to occasion his inefficiency.   That he may have subsequently become still less efficient by overfeeding or neglect did not destroy the effect of this affirmative proof.

Many others of the instructions given are complained of, but the complaint in each case resolves itself into one of failure to fully instruct, rather than of substantial error in the instructions given. As no instructions

6. INSTRUCTIONS. were asked, it is evident that the appellant has not made out a ground of reversal in these respects.

Plaintiff, as a witness, was allowed, over defendant's objections, to answer the question, " Do you know the fair and reasonable market value of the jack, had he been as you

7. EVIDENCE OF thought he was ? "   Of course, the question was
VALUE.          not in proper form, for what the plaintiff thought was wholly immaterial, unless his expectations were reasonably based on defendant's representations; but, in the connection in which the question was asked and answered, it was plain that the witness must have understood it to be predicated upon defendant's representations.

The purchase price of the jack was $400, and the evidence tended to show that, if he had been as represented, he would have been worth at least that much, and that, if he

8. BREACH OF    was worthless for breeding purposes, he was of
WARRANTY:
verdict.        no money value.   The evidence fully supports the verdict of $300 in plaintiff's favor.

We find no prejudicial error in the record.   The judgment is *affirmed*.